1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTUMN ZETZ, et al., | Case No.  1:19-cv-00451-AWI-SAB |
| Plaintiffs, | ORDER DENYING PLAINTIFF'S MOTION TO QUASH SUBPOENA OF NON-PARTY GREG VIGNA OR ALTERNATIVELY MOTION FOR PROTECTIVE ORDER |
| v. | |
| BOSTON SCIENTIFIC CORPORATION, | (ECF No. 75) |
| Defendant. | |

## I.

## INTRODUCTION

Currently before the Court is Plaintiffs Autumn Zetz ("Zetz") and Eric Zetz's (collectively "Plaintiffs") motion to quash or alternatively impose a protective order regarding the notice of deposition and subpoena to testify at a deposition in a civil action for nonparty Greg Vigna ("Vigna") served by Defendant Boston Scientific Corporation ("Defendant").  The Court heard oral argument on the motion to quash on February 23, 2022 via Zoom videoconference.  Counsel Lourdes DeArmas of the Dolan Law Firm appeared by videoconference for Plaintiffs.  Counsel Karen Firstenberg of Faegre Drinker Biddle Reath LLP appeared by videoconference for Defendant.  Vigna did not appear.  Having considered the moving and opposition papers, arguments presented at the February 23, 2022 hearing, as well as the Court's file, the Court issues the following

1

1   order denying Plaintiffs' motion to quash the deposition subpoena.

2   **II.**

3   **BACKGROUND**

4   Plaintiff Autumn Zetz was implanted with the Obtryx sling ("device"), a pelvic mesh insert

5   used to repair abdominal hernias, prolapsed organs, pelvic organ prolapse and stress urinary

6   incontinence, on November 12, 2008.  (ECF No. 1-1.)  Zetz was implanted with the device to treat

7   stress urinary incontinence.   The device was designed, manufactured, packaged, labeled,

8   distributed, and sold by Defendant.  Plaintiffs contend Defendant was aware of defects inherent in

9   the device but deliberately concealed them and instead represented the device was safe and effective

10  and continued to market the device to physicians and patients, including Plaintiffs, without

11  adequate warnings.   Plaintiffs further contend the device was correctly implanted in Zetz but

12  degraded on explant and caused multiple medical conditions in Zetz, including pudendal neuralgia,

13  catastrophic pain syndrome, bowel and bladder dysfunction, dyspareunia, and loss of mobility.  As

14  a result, Plaintiffs claim Zetz suffered significant mental and physical pain and suffering, permanent

15  injury, continued medical treatment and procedures, and financial or economic loss.   Zetz's

16  husband additionally asserts a loss of consortium claim.

17  Plaintiffs initiated this lawsuit on February 1, 2019 in the Fresno Superior Court, asserting

18  claims for strict liability, negligence, breach of implied and express warranty, fraud, negligent

19  misrepresentation, fraud by concealment, and loss of consortium.  (Id.)  Defendant removed the

20  action to federal court on April 12, 2019.  (ECF No. 1.)  On May 16, 2019, the Court related the

21  instant action and cases 1:19-cv-00381-DAD-SKO; 1:19-cv-00575-LJO-SKO; 1:19-cv-00576-

22  AWI-EPG; 1:19-cv-00578-DAD-SKO; 1:19-cv-00581-DAD-SKO; 1:19-cv-00583-DAD-EPG;

23  1:19-cv-00584-LJO-SAB; 1:19-cv-00585-LJO-EPG; 1:19-cv-00587-DAD-BAM; 1:19-cv-00588-

24  LJO-BAM; 2:19-cv-00773-MCE-EFB with Case No. 1:19-cv-00574-LJO-SAB, based on the

25  finding that the actions involve the same parties, are based on similar claims, and present similar

26  questions of fact and law.  (ECF No. 8.)  On February 1, 2019, Plaintiffs filed the operative first

27  amended complaint.  (ECF No. 16; see also ECF No. 75-1 at 1.)

28  On October 11, 2019, the parties appeared for the initial scheduling conference.  (ECF No.

26.)  Thereafter, the Court issued the initial scheduling order.  (ECF No. 27; see also ECF No. 30 (corrected order).)  Since that date, the parties have submitted, and the Court has granted, seven stipulated requests to modify the schedule.  (ECF Nos. 40, 41, 42, 43, 47, 48, 52, 55, 58, 59, 66, 67, 68, 69.)  Pursuant to the current schedule, expert and non-expert discovery closed on January 21, 2022; the dispositive motion filing deadline is March 25, 2022; the pretrial conference is set for August 3, 2022; and trial is set to commence on October 4, 2022.  (ECF No. 69.)  A stipulated protective order governing the production of confidential documents was entered in this case on June 23, 2020.  (ECF No. 46.)

On January 21, 2022, Plaintiffs filed the instant motion to quash deposition of non-party Greg Vigna or alternatively motion for protective order.  (ECF No. 75.)  Plaintiffs seek to quash Vigna's deposition on the basis that Plaintiffs retained Vigna and his law firm during the pre-litigation phase of this action on August 21, 2018, and that all communications between Plaintiffs and Vigna are protected by the attorney-client privilege.  Alternatively, Plaintiffs move for a protective order to protect their right to confidentiality of communications with Vigna.  On January 24, 2022, the Court ordered the parties to file a joint statement in compliance with Local Rule 251.  (ECF No. 77.)  Instead, on February 9, 2022, Defendant filed an opposition to the motion.  (ECF No. 78.)  However, on February 16, 2022, the parties filed a joint statement.  (ECF No. 79.)  On February 23, 2022, the Court heard oral argument on Plaintiffs' motion to quash via Zoom videoconference.

### III.

### LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena to command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control. . . ."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  In response to the subpoena, the nonparty must serve objections to the request before the earlier of the time specified for compliance or fourteen days after the subpoena is served.  Fed. R. Civ. P. 45(d)(2)(B.)  If an objection is made, the serving party may move for an order compelling compliance in the court for the district where compliance is required.  Fed. R. Civ. P. 45(b)(1)(B(i).

3

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34.  Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Ctr., 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) that the amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules.").  Rule 34(a) provides that a party may serve a request that is within the scope of Rule 26.  Under the Federal Rule of Civil Procedure 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  In deciding discovery disputes, courts must be careful not to deprive the party of discovery that is reasonably necessary to their case.  Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc., 649 F.2d 646, 680 (9th Cir. 1980).  Nonetheless, even though relevance is broadly defined, it does have "ultimate and necessary boundaries."  Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351).  While discovery should not be unnecessarily restricted, discovery is more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.  Dart Indus. Co., Inc., 649 F.2d at 649.  "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena."  Gonzales, 234 F.R.D. at 680.

Rule 45(d)(3)(A) sets forth the bases for a court to quash or modify a subpoena, which provides that:

///

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden."

Fed. R. Civ. P. 45(d)(3)(A).

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citing Goodyear Tire & Rubber Co., 211 F.R.D. at 662). Thus, in determining undue burden, the Court should weigh the burden of the subpoenaed party against the requested information's relevance, need of the serving party for the information, the breadth of the information requested, the time period covered by the request, and the particularity with which the request is made. Moon, 232 F.R.D. at 637.

## IV.

## DISCUSSION

### A.      Motion to Quash

1.      Parties Position

#### a.      Plaintiffs' Position

Vigna is both a licensed medical doctor and a licensed attorney. (ECF No. 79 at 6.) Plaintiffs seek to quash Vigna's subpoena on the basis of attorney-client privilege. (Id. at 2–3.) This appears to be the only substantive basis for Plaintiffs' motion. Plaintiffs assert Vigna never treated Zetz as a healthcare provider and the advice she received from Vigna is strictly legal in nature. (Id. at 6–7.)

More specifically, Plaintiffs assert they contacted Vigna on July 25, 2018, and filled out his legal representation intake form regarding their mesh insert cases, and thereafter signed a retainer

with Greg Vigna, M.D., Attorney at Law and Bossier & Associates, PLLC (collectively referred to as "the Firms") on August 21, 2018.  (Id. at 5; DeArmas Decl. ¶¶ 4–5, ECF No. 75-1; Intake form, ECF No. 75-2 at 1; Retainer Agreement, ECF No. 75-2 at 4–5[1].)  At some point, Plaintiffs forwarded medical records to Vigna and/or Bossier; the date that Zetz's medical records were provided to Vigna is unascertainable from the attached exhibits.  (See Aug. 22, 2018 email correspondence, ECF No. 75-2 at 2–3.)

Prior to filing the complaint on February 1, 2019, Plaintiffs retained the Dolan Law Firm. (ECF No. 79 at 6.)  Plaintiffs maintain the Dolan Law Firm was retained as co-counsel to Bossier & Associates, PLLC and Vigna.  (Id.)  Further, Plaintiffs maintain Defendant was already aware that Plaintiffs' communications with Vigna were privileged because this issue arose during Zetz's first deposition on February 27, 2020, at which time Plaintiffs' counsel objected to Defendant's line of questioning on the basis of attorney-client privilege and Defendant did not further pursue those questions.  (Id.; DeArmas Decl. ¶ 7; Autumn Zetz Dep. (excerpt), ECF No. 75-2 at 19–27.) Thus, Plaintiffs claim the deposition subpoena Defendant subsequently served on Vigna on January 11, 2022, was improper.  (ECF No. 79 at 7.)

**b.   Defendant's Position**

Defendant disputes Plaintiffs' assertion that Vigna is their attorney and presents a very different chronology of events with respect to the characterization of the Zetz-Vigna relationship. Namely, that Zetz contacted Vigna to discuss the relationship between her pudendal neuralgia and the device well before she considered filing the instant lawsuit, not to obtain legal advice.  (ECF No. 79 at 11.)  Thus, Defendant argues the relationship between Vigna and Zetz is that of treating physician and patient, not attorney and client, even though Vigna "is coincidentally licensed to

---

[1] The Retainer Agreement attached to Plaintiffs' motion includes only the signatures of Plaintiffs, and not Vigna or any attorney from the Bossier firm.  Defendant also pointed out the agreement Plaintiffs submitted was not fully executed in its oppositional briefing.  At the hearing on the motion, Plaintiffs' counsel indicated she had a copy of the agreement that included all signatures, and would provide it to the Court and parties forthwith.  Defendant was directed to notify the Court if, after reviewing the agreement, supplemental briefing to address the new document was required.  Plaintiffs provided their copy of the agreement to the Court and parties and filed it after the hearing.  (ECF No. 82.)  The new copy of the agreement includes signatures of both Plaintiffs, Vigna, and Bossier, but is not dated.  (Id.)  Upon review of the document, Defendant notified the Court that it would not seek to supplement its briefing and submitted on the papers and oral argument.  Further references to the retainer agreement herein shall pertain to Plaintiffs' subsequent filing at ECF No. 82.

6

practice law." (Id. at 3–4.)  Zetz indicated in her own deposition that she didn't believe Vigna was her attorney, and Vigna has never made an appearance on Plaintiffs' behalf in this Court.  (Id.)  Defendant further argues no attorney-client relationship existed between Plaintiffs and Vigna at the time medical advice was given, which occurred prior to the initiation of the instant lawsuit and weeks before Zetz signed the retainer agreement.  (Id. at 4.)

To the extent an attorney-client relationship exists, Defendant argues Zetz has waived this privilege by discussing her conversations between herself and Vigna with other medical providers and by testifying about the scope of her conversations with Vigna at her deposition.  (Id.)  Because Plaintiffs have put Zetz's medical condition at the center of this product liability case, Defendant argues deposing Vigna about his medical observation, analyses, and conclusions are crucial to Defendant's case.  (Id. at 3.)

Finally, Defendant argues Plaintiffs' motion is procedurally deficient.  (Id. at 4–5.)

2.       Procedural Arguments

As an initial matter, the Court addresses the disputed issue of whether Plaintiffs complied with the procedural requirements under the Federal Rules of Civil Procedure with respect to the instant motion.

Defendant served the at-issue deposition subpoena on Vigna on January 11, 2022.  (Id. at 7.)  The notice of deposition set the deposition to occur on January 21, 2022, ten days after the date of service, on the day of the discovery cutoff.  At the hearing on the motion, defense counsel confirmed the deposition was noticed unilaterally, and was the only deposition set by Defendant that provided only ten days' notice.  Nonetheless, the parties do not dispute that the deposition was properly noticed.  Vigna and all counsel met and conferred on January 19, 2022, eight days after the subpoena was served on Vigna, at which time Plaintiffs also sent Defendant objections regarding the subpoena.  (Id. at 2.)  Plaintiffs filed their motion to quash on January 21, 2022, approximately two hours before the deposition was scheduled to occur.  (Id. at 7, 22; DeArmas Decl. ¶ 11; correspondences, ECF No. 75-2 at 15–18).  Vigna did not appear for the deposition.  (See ECF No. 79 at 22.)

Plaintiff claims the motion was timely filed pursuant to Federal Rule of Civil Procedure

7

45(d)(2)(B), which provides a person commanded to produce documents may serve written objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served." (Id. at 7.)  Defendant suggests, but does not expressly argue, the motion was untimely because it was not made promptly after service of the subpoena but was filed a mere two hours before the scheduled deposition.  (See id. at 23.)  Further, Defendant argues the motion and Vigna's failure to appear were procedurally improper because Plaintiffs were required to move for a protective order *and obtain a stay order prior to the deposition* in order to have a basis for refusing to attend, but they did not seek or obtain a stay concurrently with their motion to quash.  (Id. at 22–23.)  The Court declines to reject Plaintiffs' motion on these procedural bases.

"[T]o be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena." Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc., No. 2:16-MC-0145 KJM AC, 2016 WL 5469257, at *2 (E.D. Cal. Sept. 29, 2016) (citing Moore's Federal Practice, Civil § 45.50[1] & n.3 (collecting cases)).  Plaintiffs' motion was made two hours prior to the scheduled deposition; therefore, the motion is deemed timely with respect to its filing.

The hearing date for the motion, however, is not timely.  As the Court had noted, expert and non-expert discovery closed on January 21, 2022.  (ECF No. 69.)  Thus, all discovery was required to be completed by January 21, 2022.  As noted in the Court's original scheduling order, this includes all discovery-related motions and hearings:

> The parties are cautioned that the discovery/expert cut-off deadlines are the dates by which all discovery must be completed.  Absent good cause, the Court will only grant relief on a discovery motion if the relief requested requires the parties to act before the expiration of the relevant discovery deadline.  In other words, discovery requests and deposition notices must be service sufficiently in advance of the discovery deadlines to permit time for a response, time to meet and confer, time to prepare, file and hear a motion to compel and time to obtain relief on a motion to compel.  Counsel are expected to take these contingencies into account when proposing discovery deadlines. Compliance with these discovery cutoffs requires motions to compel be filed *and heard* sufficiently in advance of the discovery cutoff so that the Court may grant effective relief within the allotted discovery time.  A party's failure to have a discovery dispute heard sufficiently in advance of the discovery cutoff may result in denial of the motion as untimely.

(ECF No. 27 at 3 (emphasis in original).)  Accordingly, Plaintiffs' motion to quash, setting the

hearing for February 28, 2022,[2] is untimely pursuant to Court's scheduling order.  It is also noteworthy to the Court that the schedule has been modified seven times — at the parties' stipulated request — in order to further extend the discovery deadlines.  (See ECF Nos. 40, 41, 42, 43, 47, 48, 52, 55, 58, 59, 66, 67, 68, 69.)  Notably, in their most recent stipulated request to modify the discovery deadline, the parties proffered that Zetz had recently undergone additional medical procedures that were relevant to her claims and the parties needed time to conduct discovery "on [those] procedures and still ongoing treatment"; this included a second, limited deposition of Zetz. (ECF No. 68.)  Yet, neither party sought to further modify the schedule to permit the deposition of Vigna, the adjudication of the instant motion, or to permit Defendant time to seek an order compelling Vigna's deposition testimony.

However, the Court is not unsympathetic to Plaintiffs' position.  It is apparent that Plaintiffs exercised sufficient diligence in seeking to quash the subpoena by submitting formal objections eight days after service of the subpoena and filing their motion ten days after service.  The fact that Defendant unilaterally set a nonparty deposition to occur on the very day of the discovery cutoff with ten days' advance notice is not well-taken.[3]  Nor is the Court inclined to penalize Plaintiffs for not attending a deposition after timely submitting objections and moving to quash the subpoena. See Amtrust N. Am., Inc., 2016 WL 5469257 (finding party need not comply with a subpoena that is the subject of a motion to quash); see also Fed. R. Civ. P. 45(d)(2)(B)(i)–(ii) (if an objection is made, the serving party may file a motion to compel).  At the point Plaintiffs submitted their objections, Defendant could have also moved to compel the testimony, but it did not do so. Accordingly, the Court rejects Defendant's procedural arguments and *sua sponte* finds sufficient good cause exists to hear Plaintiffs' motion on the merits.

///

---

[2] Plaintiffs initially set this matter for hearing on February 28, 2022, before the Honorable Anthony W. Ishii.  (ECF No. 75.)  However, because all discovery motions are to be adjudicated by the assigned magistrate judge, on January 24, 2022, the Court issued an order resetting the hearing for February 23, 2022 before the Honorable Stanley A. Boone. (ECF No. 77.)

[3] The Court acknowledges Defendant's position at the hearing that it was only able to assess how the communications Zetz had with Vigna fit into the posture of the case after exploring Zetz's medical records and hearing Zetz's testimony during her second deposition on December 16, 2021.  However, no explanation was provided as to why no further modifications of the schedule were requested at the time it became apparent that the deposition of Vigna was required.

3.     Merits Analysis

Turning to the merits of Plaintiffs' motion, Plaintiffs argue Vigna is their attorney and he may not be deposed without violating the attorney-client privilege.  Proceeding on the premise that Zetz has an attorney-client relationship with Vigna, Plaintiffs argue Defendant has not satisfied the Shelton factors, which derive from a test developed by the Eight Circuit on the appropriateness of deposing opposing trial counsel.[4]  (ECF No. 79 at 6–10); Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir. 1986).

Defendant rejects Plaintiffs' premise, arguing that no attorney-client relationship exists.  (ECF No. 79 at 13–16.)  Further, Defendant argues Zetz waived any privilege by discussing her communications with Vigna with other doctors and during her second deposition.  (Id. at 21–22; ECF No. 78 at 9–12.)  Defendant argues in the alternative that the Shelton factors are met.  (ECF No. 79 at 16–21.)

The Court will first address the issue of whether an attorney-client relationship was formed, as application of the Shelton test is contingent on this first finding, then address the parties' remaining arguments.

**a.     Whether an Attorney-Client Relationship Exists**

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege . . . rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."  Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981) (internal

---

[4] Under the Shelton test, the Eight Circuit has held that opposing counsel should only be deposed after a showing that (1) no other means exist to obtain the information sought, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of this case.  Shelton, 805 F.2d 1323, 1327 (8th Cir. 1986).  Plaintiffs indicate the Shelton test must be applied, but the Court notes the Ninth Circuit has not addressed Shelton; nor does it appear that California district courts uniformly apply Shelton in every situation in which an attorney is subpoenaed for a deposition.  Compare Riverbank Holding Co., LLC v. New Hampshire Ins. Co., No. 2:11-cv-02681-WBS-GGH, 2012 WL 4748047 (E.D. Cal. Oct. 3, 2012) (applying Shelton test) with Dorroh v. Deerbrook Ins. Co., No. 1:11-cv-2120 AWI GSA, 2012 WL 4364149 (E.D. Cal. Sept. 21, 2012) (declining to apply Shelton where attorney was a percipient fact witness and instead applying test from Second Circuit under In re Subpoena Issued to Dennis Friedman, 350 F.3d 65 (2d Cir. 2003)) and Devlyne v. Lassen Mun. Utility Dist., No. S-10-0286 MCE GGH, 2011 WL 4905672 (declining to apply Shelton because attorney was not trial/litigation counsel and criteria only apply "when trial and/or litigation counsel are being deposed and the questioning would expose litigation strategy in the pending case").

citations omitted).

"The fact that a person is a lawyer does not make all communications with that person privileged." U.S. v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (citations omitted.)  Rather, "[t]he attorney-client privilege applies when (1) legal advice is sought (2) from a professional legal advisor in his capacity as such, and (3) the communications relating to that purpose (4) are made in confidence (5) by the client."  Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (citing Admiral Ins. v. U.S. Dist. Court, 881 F.2d 1486, 1492 (9th Cir. 1989), and In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977).

"The party asserting the privilege bears the burden of establishing each element." Bruno v. Equifax Info. Servs., LLC, No. 2:17-cv-327-WBS-EFB, 2019 WL 633454, at *4 (E.D. Cal. Feb. 14, 2019) (citing Ruehle, 583 F.3d at 608).  Further, "[a] party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication." Ruehle, 583 F.3d at 607 (emphasis in original) (citations omitted).  As stated by the Ninth Circuit, the attorney-client privilege "is strictly construed," id. at 607, and should apply "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client." Tornay v. U.S., 840 F.2d 1424, 1426 (9th Cir. 1988) (citing U.S. v. Osborn, 561 F.2d 1334, 1339 (9th Cir. 1977)).  Where applicable, the privilege protects a communication from discovery so long as the privilege has not been waived.  Admiral Ins., 881 F.2d at 1492.

i.    Confidentiality

One of the essential elements of the attorney-client privilege is the intent that the communication be kept confidential.  See U.S. v. Miller, 874 F.2d 1255 (9th Cir. 1989).  Courts have consistently refused to apply the privilege to information that the client intends or understands may be conveyed to others.  See, e.g., In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984); U.S. v. Tellier, 255 F.2d 441, 447 (2nd Cir. 1957), cert. denied, 358 U.S. 821 (1958); U.S. v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976), cert. denied, 426 U.S. 952 (1976); U.S. v. Cote, 456 F.2d 142, 144 (8th Cir. 1972); Wilcoxon v. U.S., 231 F.2d 384, 386 (10th Cir. 1955), cert. denied, 351 U.S. 943 (1956); S. Film Extruders, Inc. v. Coca–Cola Co., 117 F.R.D. 559, 562 (M.D.N.C. 1987).  This refusal is not based upon a finding of waiver of the privilege due to disclosure to third

1    parties.  Rather, courts find that the privilege never attached to the communications at all.

2           Whether or not a given communication is "confidential" within the meaning of the privilege

3    is determined from the perspective of the client.  U.S. v. Moscony, 927 F.2d 742, 751–52 (3rd Cir.

4    1991), cert. denied, 501 U.S. 1211 (1991); U.S. v. Bay State Ambulance & Hosp. Rental Serv.,

5    Inc., 874 F.2d 20, 28 (5th Cir. 1989).  The client's expectation of confidentiality, however, must be

6    reasonable.  Bay State Ambulance, 874 F.2d at 28; Moscony, 927 F.2d at 752; Kevlik v. Goldstein,

7    724 F.2d 844, 849 (1st Cir. 1984).  So, for example, a claim of confidentiality may be defeated

8    where the client knowingly makes the communication in the presence of a third party.  U.S. v.

9    Rockwell Int'l, 897 F.2d 1255, 1265 (3rd Cir. 1990) ("The attorney-client privilege does not apply

10   to communications that are intended to be disclosed to third parties or that in fact are so disclosed.").

11   Thus, the decisive inquiry is "whether the client reasonably understood the conference to be

12   confidential."  Kevlik, 724 F.2d at 849 (quoting McCormick on Evidence § 91 at 189 (1972)); U.S.

13   v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991), cert. denied, 502 U.S. 1005 (1991).

14          With respect to the client's perspective, Plaintiffs acknowledge that Zetz "forgot" she had

15   signed a retainer agreement with Vigna as well as Bossier (see ECF No. 79 at 6), but argue the

16   attorney-client relationship nevertheless exists because Plaintiffs' attorney Ms. DeArmas (Dolan

17   Law Firm), who defended Zetz's depositions, raised an objection of attorney-client privilege at

18   Zetz's first deposition.  (See id.)  Plaintiffs have cited no legal authority for this contention.

19   Plaintiffs also acknowledge Vigna is a licensed medical doctor as well as an attorney, but Ms.

20   DeArmas avers that the advice Zetz received from Vigna "is strictly legal in nature."[5]  (Id. at 6–7;

21   DeArmas Decl. ¶ 10.)

22          Defendant argues the timeline and evidence belies Plaintiffs' claim that Vigna provided

23   only legal advice during his initial meeting with Zetz and instead supports a finding that Plaintiffs

24   did not initially speak with Vigna "with a view to retention of the lawyer" during their first

---

[5] In this respect, counsel's declaration attesting to the mental state of her client before Plaintiffs retained the Dolan Law Firm is improper evidence that lacks foundation.  At the hearing on the motion, Counsel indicated no client declarations were submitted in support of this motion because Counsel did not deem them necessary in light of the deposition testimony already in the record.  This argument is unpersuasive.  The Court similarly disregards conclusory legal statements in Counsel's declaration with respect to whether an attorney-client relationship was formed between Plaintiffs and Vigna.

encounter.  (ECF No. 79 at 14.)  First, Defendant points to the timeline of the retention.  Zetz had two separate communications with Vigna, one by phone and one in person — both well in advance of initiating this litigation.  Zetz's initial contact with Vigna took place around August 9, 2018; however, Plaintiffs did not sign the retainer agreement for Vigna and the Bossier firm until nearly two weeks after Zetz's initial meeting with Vigna.  (Id.)  Nothing in the record indicates when Vigna and Bossier signed the agreement.  Further, because the retainer agreement is not dated by any signatory, it provides no insight as to when the agreement was deemed effective.  At the hearing, Plaintiffs argued that it is commonplace for a client not to sign a retainer agreement until several weeks after an initial consultation meeting and the Court agrees that the timing of the execution of the retainer agreement, alone, would not be sufficient to negate client intent.  However, when viewed within the context of the other circumstances set forth in the record, the retainer agreement tends to lend support to Defendant's argument.

Defendant next points to Zetz's deposition testimony, in which she states she initially contacted Vigna while looking for "medical papers" relating to her diagnosis, rather than because she was seeking legal advice from him in his capacity as a lawyer.  The fact that Zetz admittedly sought Vigna out to discuss his medical opinion regarding the relationship between the device and her medical condition tends to support Defendant's argument.  Most importantly, Zetz's deposition testimony indicates she did not consider Vigna to be her legal counsel in this action.  Specifically, when asked whether she retained Vigna, Zetz responded "I don't believe so.  I think I just — I think I just retained Sheila [Bossier, of Bossier & Associates, PLLC]."  (Id. at 14–15; ECF No. 78-2 at 7–8 (Zetz Deposition).)  At the hearing, Plaintiffs attempted to mitigate the effect of this testimony by explaining that Bossier was brought in primarily as local counsel, but became more involved and "took lead on the case" as it progressed,[6] and that Zetz was only speaking to Bossier, therefore "she didn't know" whether or not Vigna was her attorney.  But this explanation is not germane to

---

[6] To that point, it is possible Counsel was referring to her own firm, the Dolan Law Firm, as it is based out of San Francisco whereas Bossier & Associates, PLLC is based out of Jackson, Mississippi and all of its attorneys are appearing in this matter pro hac vice.  (See, e.g., pro hac vice application, ECF No. 17.)  Incidentally, the extent of the Bossier firm's involvement in this litigation since its inception is unclear.  The Court notes no attorneys from Bossier appeared in this action until August 2019, approximately six months after the Dolan Law Firm filed the complaint on Plaintiffs' behalf, nor did any Bossier attorneys appear at the hearing on the instant motion.  Further, it also appears that Ms. DeArmas of the Dolan Law Firm defended both of Zetz's depositions.

ascertaining Zetz's perception as to whether she was speaking with Vigna during their initial meetings in his capacity as an attorney, for attorney-client confidentiality purposes.  Because the determination of whether or not a given communication is "confidential" within the meaning of the attorney-client privilege must be determined from the perspective of the client, Moscony, 927 F.2d at 751–52, Plaintiffs' argument is unavailing.

It is also noteworthy to this Court that, despite Plaintiffs' current assertion that the "Dolan Law Firm was retained as co-counsel to Bossier & Associates, PLLC and Vigna" prior to the filing of the complaint, Vigna has never appeared in the instant action, nor is Vigna listed on the docket as an attorney of record for either Plaintiff.  Indeed, Plaintiffs' counsel confirmed Vigna hasn't been involved in any manner in this case since Bossier "took over."  See Bay State Ambulance, 874 F.2d at 28 (finding no attorney-client relationship where defendant retained separate counsel; defendant contacted plaintiff through his separate counsel; defendant did not pay attorney for his services; and defendant did not ask attorney to take any action on his behalf).

Based on this record, it does not appear that Zetz considered Vigna to be her attorney at the time of her initial meeting with him.  Therefore, Plaintiffs have not established that Zetz intended her initial communication with Vigna be kept confidential based on the attorney-client privilege.  Accordingly, the Court concludes Zetz's discussion with Vigna during their initial meeting is not privileged.

ii.      Primary Purpose of the Initial Consultations

As Plaintiffs correctly argued, "[t]he fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result."  Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1319 (7th Cir. 1978); see also Cal. v. Kinder Morgan Energy Partners, L.P., No. 07-CV-1883 MMA (WVG), 2010 WL 11672491, at *3 (S.D. Cal. Dec. 16, 2010) (same).  Nor does the "absence of an agreement with respect to the fee to be charged" prevent the relationship from arising.  Miller v. Metzinger, 91 Cal. App. 3d 31, 39 (1979).  Nonetheless, a party seeking to withhold discovery based upon the attorney-client privilege must prove that all of the communications it seeks to protect were made "**primarily** for the purpose of generating legal

advice." <u>McCaugherty v. Siffermann</u>, 132 F.R.D. 234, 238 (N.D. Cal. 1990) (emphasis in original).

As previously noted, Ms. DeArmas states in her declaration that "Vigna has never treated Mrs. Zetz as a healthcare provider, and the advice she HAS received from Vigna is strictly legal in nature." (DeArmas Decl. ¶ 10 (emphasis in original).) Again, Plaintiffs point to the retainer agreement to demonstrate Zetz's communications with Vigna fall under the attorney-client relationship. But nothing in the retainer agreement particularly supports their argument. For example, it is unclear from the retainer form, which is redacted almost in its entirety, under what capacity Vigna was retained alongside the Bossier law firm (i.e., the entire "basis for contract" section was redacted), or what Vigna's fee schedule was with respect to services he provided Plaintiffs (the entire "contingent fee arrangement" section was redacted). Counsel stated at the hearing that the contingency fee would be divided between Vigna and Bossier and that no fees were charged upfront for Vigna's consultation, but did not elaborate on the services provided. When asked to elaborate on Vigna's relationship with the Bossier law firm, Plaintiffs' counsel explained the Bossier firm "does the transvaginal mesh cases and works with Vigna." Vigna has a medical practice, but nothing dealing specifically with transvaginal mesh cases. Counsel also explained Vigna works as a "life-care planner," which Counsel described as an expert who reviews the client's medical records and opines on a future treatment plan for the patient (such as home modalities, accommodations, etc.) to "determine the patient's costs." The Court cannot determine from this description of Vigna's work that Zetz met with Vigna in the capacity of an attorney rather than for medical or other purposes.

Defendant, by contrast, has identified portions of Zetz's deposition testimony that suggest Zetz did not initially consult with Vigna "primarily for the purpose of generating legal advice." Zetz testified that, prior to initiating the instant lawsuit and after she was diagnosed with pudendal neuropathy, she was examined by a physician that opined the device was not causing her pudendal neuropathy. (ECF No. 79 at 11 (citing ECF No. 78-2 at 6 (Zetz Dep.)).) Unconvinced, Zetz conducted internet searches with search terms relating to pudendal neuropathy so as to "see what medical papers there were, any information [she] could find on those [terms]"; this search led to the discovery of various medical articles Vigna had written regarding "the relation of pudendal

1   neuropathy and bladder slings." (Id. at 11–12 (citing ECF No. 78-3 at 4–6 (Zetz Dep. II)).)  After

2   reading Vigna's articles, Zetz spoke with him by phone and in person regarding "the relationship

3   between the pudendal neuropathy and bladder slings . . . [and] about how there could be a

4   correlation [between the two]." (Id. at 12.)  This testimony supports a finding that the primary

5   purpose of Zetz's initial communication/s with Vigna was to obtain further medical information

6   from Vigna about the potential correlation between Zetz's pudendal neuropathy and the device, as

7   opposed to being "primarily for the purpose of generating legal advice." McCaugherty, 132 F.R.D.

8   at 238.  For this reason, as well, the Court concludes no privilege arose during Zetz's initial meeting

9   with Vigna.  "Since the Court has concluded that no privilege arose, the Court need not consider

10  whether the privilege was properly claimed or whether it was waived." Brackin v. Anderson, No.

11  1:06-cv-727-SEB-VSS, 2007 WL 129044, at *2 (S.D. Ind. Jan. 12, 2007).  Nonetheless, the Court

12  additionally finds any privilege that may have arisen with respect to Zetz's initial communications

13  with Vigna was waived for the following reasons.

14          iii.     Waiver

15          The party asserting the attorney-client privilege must prove it has not waived the privilege.

16  Admiral Ins., 881 F.2d at 1492; U.S. v. Landof, 591 F.2d 36, 38 (9th Cir. 1978).  Therefore,

17  Plaintiffs have the burden to prove that they did not waive the attorney-client privilege regarding

18  the communications they now seek to protect.

19          Defendant argues any attorney-client privilege that may have existed between Zetz and

20  Vigna with respect to their initial communications was waived when Zetz testified about the scope

21  of those conversations during her December 16, 2021 deposition (see ECF No. 78-3 at 3–6), and

22  when Zetz discussed the content of her conversations with Vigna with other medical providers.

23  (ECF No. 79 at 13; ECF No. 78 at 17–18.)  Further, Defendant contends the privilege was waived

24  when Plaintiffs' counsel failed to object to the line of questioning in Zetz's second deposition

25  regarding Vigna.  (ECF No. 78 at 17–18.)

26          With respect to Zetz's communications with other medical providers, Zetz confirmed

27  during her deposition that in a progress note written by Zetz's physical therapist, Linda Land, the

28  following conversation she had with Ms. Land was referring to her communications with Vigna:

16

> . . . hired a lawyer who is a physician at Health South in Modesto.
> He thinks the pain is due to the bladder sling.  She saw him on a
> website and talked to him.  He told her the bladder sling needs to be
> removed because he thinks it's causing her pudendal pain and her leg
> pain.

(ECF No. 78-3 at 3.)[7]   Voluntary disclosure of a privileged communication to a third person

destroys attorney-client confidentiality and constitutes a waiver of the privilege.  Clady v. Cnty. of

Los Angeles, 770 F.2d 1421, 1433 (9th Cir. 1985), cert. denied, 475 U.S. 1109 (1986); Weil v.

Inv./Indicators, Rsch. & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981); U.S. v. El Paso Co., 682 F.2d

530, 539–41 (5th Cir. 1982), cert. denied, 466 U.S. 944 (1984); Cal. Evid. Code § 912(a) (a party

waives the attorney-client privilege if she "has disclosed a significant part of the communication or

has consented to such disclosure made by anyone.").  And, as previously noted, "[w]here

communications between a client and attorney have been disclosed to a third party, the burden is

on the party asserting the privilege to show that it applies despite that disclosure."  Anderson v.

SeaWorld Parks & Ent., Inc., 329 F.R.D. 628, 632 (N.D. Cal. 2019).

        Plaintiffs' briefings do not address the issue of waiver.  However, at the hearing, Plaintiffs

argued Zetz's conversation with Ms. Land did not waive her attorney-client privilege with Vigna

because Zetz also had an expectation of confidentiality with Ms. Land based on the doctor-patient

privilege.  There are a number of reasons for which the Court finds this argument unpersuasive.

First, "[a] party may waive a privilege when that party's claims put privileged information at issue."

Speaker ex rel. Speaker v. Cnty. of San Bernardino, 82 F. Supp. 2d 1105, 1117 (C.D. Cal. 2000)

(evaluating waiver in context of psychotherapist-patient relationship) (citing Home Indem. Corp.

v. Lane Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995) (applying rule to attorney/client

privilege)).  If, as Plaintiffs contend, Zetz considered her communications with Vigna privileged

because she already had an eye to litigation at the time of their first communication, then she could

have no reasonable belief that the information in her medical records pertaining to her bladder sling

---

[7] The Court notes this conversation also supports its finding that the primary purpose of Zetz's initial communication/s
with Vigna was to obtain medical information, as opposed to being "primarily for the purpose of generating legal
advice," as Vigna's advice to Zetz to have her bladder sling removed because he thought it was the cause of her pain
symptoms appears to be more appropriately characterized as medical advice rather than legal advice.  Moreover, it
appears from the progress note that the value accorded to Vigna's opinion that Zetz's bladder sling was the cause of
her pudendal neuropathy and leg pain arises from his experience and credentials as a physician, not an attorney.

1   would remain protected by the physician-patient privilege.  Id.; see also Bay State Ambulance, 874

2   F.2d at 28 (on attorney-client privilege, noting client's expectation of confidentiality must be

3   reasonable).  Further, if Zetz believed her communications with Vigna were confidential based on

4   the attorney-client relationship, then she knowingly waived *attorney-client* confidentiality by

5   sharing the communication with a third-party non-attorney.

6          Second, Plaintiffs provide no legal authority in support of their contention, and the Court

7   has found none.  Indeed, California courts appear to suggest the opposite is true.  See. e.g., Sullivan

8   v. Superior Ct., 29 Cal. App. 3d 64 (1972) (holding patient's disclosures to psychotherapist referred

9   to the patient's lawyer loses both attorney-client and doctor-patient privileges where emotional

10  condition of the patient was made issue at trial by the client); People v. Haskett, 52 Cal. 3d 210,

11  243 (1990) (rejecting defendant's attempt to invoke attorney-client privilege for information that

12  previously lost confidentiality due to waiver of the psychotherapist-patient privilege, stating "On

13  appeal, defendant invokes for the first time the attorney-client privilege on the mistaken assumption

14  that it has survived the waiver of the psychotherapist-patient privilege."); DeLuca v. State Fish Co.,

15  217 Cal. App. 4th 671, 689 (2013) (noting attorney-client privilege is waived when expert testifies

16  to information he could have only learned through the attorney-client privilege); see also People v.

17  Clark, 50 Cal.3d 583, 268 (1990) (discussing the differences between the psychotherapist-patient

18  privilege and the attorney-client privilege).

19         At most, California recognizes the "common interest" or "joint defense" doctrine, which

20  allows disclosure of communications protected by the attorney-client privilege between parties,

21  without waiver of the privilege, where the disclosure is "necessary to accomplish the purpose for

22  which the legal advice was sought."  Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Communities,

23  No. 8:21-cv-00107-JVS (JDEx), 2021 WL 4895746, at *11 (C.D. Cal. Sept. 2, 2021) (discussing

24  Cal. Evid. Code § 912(d)) (citations omitted).  However, Plaintiffs have not invoked the common

25  interest doctrine, nor does the Court find it applicable here.  See Cont'l Cas. Co. v. St. Paul Surplus

26  Lines Ins. Co., 265 F.R.D. 510, 529 (E.D. Cal. 2010) (disclosure of attorney-client communication

27  to non-attorney third party constituted waiver to which common interest exception did not apply

28  because third party was not an attorney and the disclosure was not "reasonably necessary" to

accomplish the party's defense); see also Rockwell Int'l Corp. v. Superior Ct., 26 Cal. App. 4th 1255, 1267 (1994) ("In California, the 'joint client' or 'common interest' exception applies only where 'two or more clients have retained or consulted a lawyer upon a matter of common interest,' in which event neither may claim the privilege in an action by one against the other.").

Regardless, even if the aforementioned communication did not result in a waiver due to disclosure to Ms. Land, the Court finds a waiver also occurred during Zetz's December 16, 2021 deposition.  Failure to make a timely objection constitutes a waiver of the attorney-client privilege. Perrignon v. Bergen Brunswig Corp., 77 F.R.D. 455, 460 (N.D. Cal. 1978).  Here, it does not appear that Plaintiffs' counsel asserted any attorney-client privilege objections with respect to Defendant's line of deposition questioning regarding the scope of Zetz's conversations with Vigna.  Based on this record, it appears Zetz waived any attorney-client privilege she may have asserted with respect to her initial communications with Vigna.

Furthermore, a waiver of privilege as to one communication extends to other communications relating to the same subject matter.  U.S. v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).  "The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter." Cargill Inc. v. Budine, No. CV-F-07-349-LJO-SMS, 2008 WL 2856642, at *5 (E.D. Cal. Jul. 21, 2008) (citing 8 Wigmore, Evidence § 2328 at p. 638).  Thus, the waiver may be construed to apply to any conversations with Vigna regarding Zetz's medical condition and Vigna's opinions.  Id.

The Court is not persuaded that Plaintiffs have met their burden to establish the existence of an attorney-client relationship between Zetz and Vigna.  Moreover, the Court finds Defendant has sufficiently established — and Plaintiffs have not refuted — that any attorney-client privilege that may have existed was waived when, at a minimum, Zetz testified about her communications with Vigna during her December 16, 2021 deposition.  On this basis alone, Plaintiffs' motion to quash must be denied.

**b.    Attorney Work Product Doctrine**

Plaintiffs also argue the testimony Defendant seeks from Vigna is protected by the attorney work product doctrine.  (See ECF No. 79 at 2–3, 8–9.)  The attorney work product doctrine is

1    contained in Rule 26(b)(3) of the Federal Rules of Civil Procedure.  That subsection provides in

2    part:

> [A] party may obtain discovery of documents and tangible things
> otherwise discoverable . . . and prepared in anticipation of litigation
> or for trial . . . only upon a showing that the party seeking discovery
> has substantial need of the materials . . . and that the party is unable
> without undue hardship to obtain the substantial equivalent of the
> materials by other means.

7    Rule 26(b)(3) protects documents and things prepared in anticipation of litigation or for trial.  The

8    work product doctrine does not protect materials assembled in the ordinary course of business.

9    Rather, the primary motivating purpose behind the creation of the materials must be as an aid in

10   possible future litigation.  See U.S. v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981); In re Bairnco

11   Corp. Sec. Litig., 148 F.R.D. 91, 102–03 (S.D.N.Y. 1993).  That is, work product protection applies

12   only to material "that would not have been generated but for the pendency or imminence of

13   litigation."  Kelly v. City of San Jose, 114 F.R.D. 653, 659 (N.D. Cal. 1987).

14        At this time, it is not clear to the Court that Defendant is seeking the production of

15   documents and tangible things from Vigna.  The notice of deposition attached to Plaintiffs' motion

16   to quash establishes Vigna's deposition was to occur via Zoom but does not identify any document

17   production requests.  (ECF No. 75-2 at 7–8.)  The subpoena attached to Plaintiffs' brief similarly

18   requires Vigna's testimony, as the box next to "Testimony" is checked; however, the box next to

19   "Production" is not checked, nor are any documents or things to be produced specified.  (Id. at 9.)

20   Accordingly, to the extent Plaintiffs seek to invoke the attorney work product protections with

21   respect to any production requests, Plaintiffs' objection based on the attorney work product doctrine

22   does not appear directly applicable at this time.  To the extent Plaintiffs raise the work product

23   argument to prevent Vigna's testimony, their argument fails for the reasons previously articulated.

24        **c.      Whether Shelton Factors Are Met**

25        Because the Court concludes no attorney-client relationship between Zetz and Vigna has

26   been established and, moreover, any privilege attaching to such a relationship was waived when

27   Zetz testified about her communications with Vigna without the assertion of any attorney-client

28   privilege objections, the Court does not reach the Shelton test.

**B.      Motion for Protective Order**

Alternatively, Plaintiffs argue the Court should issue a protective order to protect Plaintiffs' right to confidentiality of their communications with Vigna.  (ECF No. 79 at 10.)

Rule 26(c) provides that "a party or any person from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1).  The rule "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." U.S. v. Columbia Broad. Sys., Inc., 666 F.2d 364, 368–69 (9th Cir. 1982).  Pursuant to Rule 26(c), the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).  For example, "[d]istrict courts need not condone the use of discovery to engage in 'fishing expedition[s].' "  Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004).

Nonetheless, the party seeking a protective order "bears the burden of showing specific prejudice or harm will result if no protective order is granted."  Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002); see also Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003) (court may enter a protective order only upon a showing of good cause).  "[C]onclusory or generalized statements fail to satisfy this burden as a matter of law."  Mainstreet Collection, Inc. v. Kirkland's, Inc., 270 F.R.D. 238, 241 (E.D. N.C. 2010).  The mere assertion of an objection, by itself, is an insufficient ground for the issuance of a protective order under Rule 26(c).  Independent Living Cntr. of S. Cal. v. City of Los Angeles, Cal., 296 F.R.D. 632, 637 (C.D. Cal. 2013) ("generalized objections of burdensomeness are insufficient" to defeat discovery); Wagner v. Dryvit Sys., Inc., 208 F.R.D. 606, 610 (D. Neb. 2001) (same).  Upon a proper showing, the Court may forbid the disclosure or discovery, specify the terms for the disclosure or discovery, or limit the scope of the disclosure or discovery to certain matters, among other remedies. Fed. R. Civ. P. 26(c)(1).

Here, Plaintiffs request a protective order in the alternative if their motion to quash is denied; however, they do not specify how they seek to limit the scope of disclosure or discovery. Nor do Plaintiffs provide non-conclusory or non-generalized reasons for the protective order.  (See ECF No. 75 at 10.)  For these reasons, Plaintiffs have not met their burden to establish good cause

1  exists for a protective order and their motion for a protective order shall be denied, without

2  prejudice to renewal if the evidence preponderates at a later deposition that a relationship existed.

3                                              **V.**

4                                **CONCLUSION AND ORDER**

5          Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion to quash the

6  deposition subpoena of non-party Greg Vigna or alternatively motion for protective order (ECF

7  No. 75), is DENIED, without prejudice.  In light of this ruling, the Court shall permit Defendant to

8  depose Vigna on a date that is mutually agreed upon by the parties and occurring **within twenty-**

9  **one days** of issuance of this order or upon a stipulated time frame and order (in light of scheduled

10  in person settlement conference).  No further discovery shall be permitted.

11

12  IT IS SO ORDERED.

13  Dated:   **March 1, 2022**   _____

14                                UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28